**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, successor by merger to PNC Equipment Finance, LLC<br><br>Plaintiff,<br><br>v.<br><br>KFIM LLC, CHRISTOPHER STEVEN KIRCHNER and ALYSSA BETH KIRCHNER,<br><br>Defendants. | Case No. [_____]<br><br>**COMPLAINT** |

Plaintiff, PNC Bank, National Association, successor by merger to PNC Equipment Finance, LLC, by and through its undersigned counsel, files this Complaint ("Complaint") against KFIM LLC, Christopher Steven Kirchner and Alyssa Beth Kirchner (collectively, the "Defendants"), and complains as follows:

**JURISDICTION AND VENUE**

1.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and is between citizens of different states.

2.      Plaintiff, PNC Bank, National Association, is headquartered in Pittsburgh, Pennsylvania. As a national association, PNC Bank, National Association is a citizen of the state of its main office for diversity of citizenship purposes.[1]

3.      Defendant KFIM, LLC is a Delaware limited liability company. As a limited liability company, KFIM, LLC is a citizen of each state in which its members are citizens.[2] KFIM,

---

[1] *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).
[2] *Gyrnberg v. Kinder Morgan Energy Partners*, 805 F.3d 901, 905-06 (10th Cir. 2015).

LLC is made up of two members: Defendant Christopher Steven Kirchner and Defendant Alyssa Beth Kirchner. Both Christopher Steven Kirchner and Alyssa Beth Kirchner are, based on the information available, citizens of the State of Texas because they are domiciled in the State of Texas with an intent to remain in Texas.[3] Therefore, because KFIM, LLC's members are citizens of the State of Texas, KFIM, LLC is a citizen of the State of Texas.

4. Therefore, because Plaintiff, a citizen of Pennsylvania, and the Defendants, citizens of Texas, are citizens of different states, the Court has diversity of citizenship jurisdiction.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

6. This Court has personal jurisdiction over the Defendants because the causes of action arose in Texas, and/or the transactions and occurrences out of which the causes of action arose took place in Texas.

## PARTIES

7. Plaintiff, PNC Bank, National Association, successor by merger to PNC Equipment Finance, LLC (together, the "Bank" or "Plaintiff") is a national banking association with an office located in Boise, Idaho. PNC Bank's headquarters are in Pittsburgh, Pennsylvania.

8. Defendant, KFIM LLC is a Delaware limited liability company with its principal place of business at 1209 Perdenalas Trail, Westlake, Texas 76262.

9. Defendant, Christopher Steven Kirchner is an individual over the age of eighteen and is otherwise *sui juris* and resides at 1209 Perdenalas Trail, Westlake, Texas 76262. Therefore, Defendant Christopher Kirchner is a citizen of the State of Texas because he is domiciled in Texas.

---

[3] *See* Exhibit H, a true and correct copy of the Tarrant County Appraisal District showing Christopher Steven Kirchner and Alyssa Beth Kirchner as the owners of 1209 Perdenalas Trail, Westlake (Roanoke), Texas 76262.

10. Defendant, Alyssa Beth Kirchner is an individual over the age of eighteen and is otherwise *sui juris* and resides at 1209 Perdenalas Trail, Westlake, Texas 76262. Therefore, Defendant Alyssa Kirchner is a citizen of the State of Texas because she is domiciled in Texas.

11. Defendants, Christopher Steven Kirchner and Alyssa Beth Kirchner are the sole members of Defendant, KFIM LLC. Therefore, because Christopher Steven Kirchner and Alyssa Beth Kirchner are citizens of the State of Texas, KFIM, LLC is a citizen of the State of Texas.

## FACTUAL BACKGROUND
### Security Agreement, Note and Guaranty

12. On or about January 7, 2022, KFIM LLC ("Borrower") executed and delivered to Bank that certain Aircraft Security Agreement with the Irrevocable De-Registration and Export Request Authorization dated January 7, 2022, which was recorded by the Federal Aviation Administration pursuant to Subtitle VII of Title 49 of the United States Code (as the same may have been or may be in the future assigned, amended, modified, supplemented and/or restated, collectively, the "Security Agreement"). A true and correct copy of the Security Agreement is attached to this Complaint as Exhibit "A."

13. Pursuant to the Security Agreement, Bank financed the acquisition of and was granted a continuing security interest in a 2010 GULFSTREAM AEROSPACE, Model Number GV-SP (G550), Manufacturer Serial Number 5261, United States FAA Registration Number N9CK, and two (2) ROLLS ROYCE Model Number BR700-710C4-11 engines, Manufacturer Serial Numbers 15633 and 15632 (collectively, the "Aircraft").

14. On or about January 7, 2022, pursuant to the terms of the Security Agreement, Bank loaned Ten Million, Eight Hundred Fifty Thousand & 00/100 Dollars ($10,850,000.00) to Borrower to purchase the Aircraft ("Loan").

3

15. In connection with the Security Agreement and Loan, Borrower executed and delivered to Bank a Ten Million, Eight Hundred Fifty Thousand & 00/100 Dollars ($10,850,000.00) promissory note dated January 7, 2022 (as the same may have been amended, modified, supplemented, and/or renewed, collectively, the "Note"). A true and correct copy of the Note is attached to this Complaint as Exhibit "B."

16. To further induce Bank to grant the credit accommodations to Borrower under the Note and Security Agreement, Christopher Steven Kirchner and Alyssa Beth Kirchner (together, the "Guarantor" and collectively with the Borrower, the "Obligors") executed and delivered to Bank that certain Limited Guaranty and Surety Agreement dated January 7, 2022 (as the same may have been amended, modified, supplemented, and/or renewed, collectively, the "Guaranty"). A true and correct copy of the Guaranty is attached to this Complaint as Exhibit "C."

17. Pursuant to the Guaranty, Guarantor absolutely and unconditionally guaranteed the prompt payment and performance of up to Three Million One Hundred Thousand & 00/100 Dollars ($3,100,000.00) plus all costs and expenses of enforcement of the Guaranty and collection and sale of any collateral securing the Guaranty including reasonable attorneys' fees (collectively, the "Guaranteed Obligations"). The Security Agreement, Note, Guaranty and all documents/agreements executed in connection therewith and related to the Loan (as the same may have been amended, modified, supplemented, and/or renewed) are hereinafter collectively referred to as the "Loan Documents." Capitalized terms not otherwise defined in this Complaint shall have the meaning given to such terms in the Loan Documents.

**Default by Borrower and Guarantor**

18. The Borrower's failure to make the monthly payment due under the Note on July 1, 2022, as required by Section (2) of the Note constituted an Event of Default under Section (5)(i) of the Note and Section (9)(a) of the Security Agreement (together, the "Monetary Default").

19. The Borrower's failure to (1) pay approximately $3,000,000.00 owed to Executive Jet Management, Inc. ("EJM") under the Amended and Restated Aircraft Management Agreement by and between the Borrower and EJM dated January 7, 2021 and (2) pay Gulfstream Aerospace Corporation ("Gulfstream") a progress payment of approximately $300,000.00 to complete the required 144-Month Inspection on the Aircraft, as required by Section (4)(k) of the Security Agreement constituted an Event of Default under Section (9)(d) of the Security Agreement (collectively, the "Contracts Default").

20. The Borrower's failure to cause the completion of the 144-Month Inspection on the Aircraft due in June 2022 as required by Section (4)(n)(5) of the Security Agreement constituted an Event of Default under Section (9)(d) of the Security Agreement (the "Inspection Default")

21. The Borrower's failure to cause the completion of the 144-Month Inspection on the Aircraft as required by Section (4)(n)(2) of the Security Agreement constituted an Event of Default under Section (9)(d) of the Security Agreement (collectively, the "Airworthiness Default").

22. The Borrower causing Gulfstream to place the Aircraft on a ramp at the Appleton International Airport in Appleton, WI, rather than storing the Aircraft in a hangar, due to the failure of the Borrower to pay amounts due Gulfstream, as required by Section (4)(n)(12) of the Security Agreement constituted an Event of Default under Section (9)(d) of the Security Agreement (the "Storage Default").

23.     A change in the Borrower's business, assets, operations, and/or financial condition that has or could reasonably be expected to have a material adverse effect on the Borrower based on the aforementioned Events of Default constituted an Event of Default under Section (5)(viii) of the Note (the "MAC Default" and collectively with any and all other events which constitute an Event of Default under the Loan Documents, and the Monetary Default, Contracts Default, Inspection Default, Airworthiness Default, Storage Default, the "Existing Events of Default").

24.     Through a written letter by Bank's counsel dated July 28, 2022 ("Default Notice"), Bank notified Borrower and Guarantor of the Existing Events of Default. A true and correct copy of the Default Notice is attached to this Complaint as Exhibit "D."

25.     In the Default Notice, the Bank advised the Borrower and Guarantor that interest would accrue at the Interest After Default rate defined in the Note effective as of the date of the Default Notice.

26.     In the Default Notice, demand was made on the Obligors to immediately pay all unpaid principal, accrued interest, prepayment premium and other charges due under the Note which at that time totaled $10,929,570.57 (collectively, the "Default Amount").

## Payoff and Shortfall

27.     In mid-August 2022, the Borrower requested permission to sell the Aircraft and informed the Bank of the Borrower's desire to repay the Loan from the proceeds of such sale.

28.     By letter dated August 18, 2022, Bank provided the Borrower with written consent to sell the Aircraft and a statement of the amount required to pay the Loan in full which the Bank calculated to be $10,348,684.59 ("August 18th Payoff Letter"). A true and correct copy of the August 18th Payoff Letter is attached to this Complaint as Exhibit "E".

29. On August 19, 2022, Borrower sold the Aircraft for a purchase price of $17,000,000.00, and the Bank released its lien on the Aircraft after being paid the amounts due as reflected in the August 18th Payoff Letter.

30. Immediately after the sale of its collateral, Bank discovered a calculation error contained in the August 18th Payoff letter.

31. In the August 18th Payoff Letter, Bank reserved the right to revise and notify the Borrower of any change in the payoff sum contained in such letter due to unforeseen circumstances, calculation errors, or amounts payable by Borrower which were not included in the letter.

32. On or about August 22, 2022, Bank advised the Borrower verbally that there was a calculation error in the payoff sum reflected in the August 18th Payoff Letter and this calculation error resulted in the payoff sum being short by a total of $223,165.36 ("Payoff Shortfall").

33. On August 22, 2022, Bank sent Borrower an updated payoff letter and requested that Borrower wire the Bank the Payoff Shortfall ("August 22nd Payoff Letter"). A true and correct copy of the August 22nd Payoff Letter is attached to this Complaint as Exhibit "F."

34. On August 26, 2022, Bank caused its counsel to notify the Borrower and Guarantor of their Obligation to pay the Bank the Payoff Shortfall and demanded that such payment be made to the Bank ("August 26th Payoff Shortfall Demand Letter"). A true and correct copy of the August 26th Payoff Shortfall Demand Letter is attached to this Complaint as Exhibit "G."

35. To date, despite demand, Borrower and/or Guarantor have failed to pay the Bank the Payoff Shortfall and have therefore failed to satisfy their obligations set forth in the Loan Documents.

36. Upon information and belief, neither Borrower nor Guarantor have valid defenses for failing to fulfill their obligations set forth in the Loan Documents.

37. All conditions precedent to this action were satisfied, waived, or occurred.

### Attorneys' Fees

38. Bank has a principal place of business at 4355 Emerald Street, Suite 100, Boise, ID 83706, however, the Bank conducts business in the State of Texas.

39. Pursuant to the Loan Documents, Borrower and Guarantor both have expressly waived any right to any jury trial in any action, proceeding or counterclaim brought by either Bank or Borrower/Guarantor against the other.

40. Pursuant to the Loan Documents, Borrower and Guarantor agreed to pay Bank's costs and expenses, including Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Loan Documents.

41. The Bank has retained the law firms of Padfield & Stout, LLP, and Buchanan Ingersoll & Rooney P.C. to enforce the Bank's rights and remedies under the Loan Documents and the Bank is obligated to pay these law firms' attorneys a reasonable fee for their services.

### COUNT I - BREACH OF CONTRACT
### (Bank v. KFIM LLC)

42. Plaintiff incorporates the allegations of the preceding paragraphs 1-38 of the Complaint as if fully restated herein.

43. As averred above, Borrower defaulted on its obligations under the Loan Documents by, *inter alia*, failing to pay principal, interest, or other indebtedness under the Note when due, specifically, the Payoff Shortfall.

44. Bank has suffered damages as a result of Borrower's breach of the Loan Documents, including, but not limited to, the Payoff Shortfall and such other exact amounts as may be proven at trial.

45. The Loan Documents provide that Bank shall recover its costs and expenses, including Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Loan Documents.

46. Interest continues to accrue on the Payoff Shortfall at the Interest After Default rate as defined in the Note.

47. The Bank's costs and expenses, including Bank's attorneys' fees and legal expenses incurred in connection with the enforcement of the Loan Documents continue to accrue.

48. Despite Bank's demand for payment, Borrower has failed and refused to pay to the Bank the amounts due the Bank under the Loan Documents, specifically, the Payoff Shortfall.

49. The Bank has performed all conditions precedent under the Loan Documents.

WHEREFORE, PNC Bank, National Association, successor by merger to PNC Equipment Finance, LLC prays that this Court enter a judgment in the above-captioned action that (1) the Bank is entitled to judgment in its favor and against KFIM LLC in the amount due under the Loan Documents and in the amount proven at trial, *plus* pre-judgment interest, and post judgment interest on any judgment accruing at the Interest After Default rate as defined in the Note from and after August 18, 2022, *plus* accruing attorneys' fees, costs, and expenses accruing after August 18, 2022; and (2) the Bank is entitled to such other relief as is just and equitable under the circumstances.

## COUNT II - ACTION ON GUARANTY
## (Bank v. Christopher Steven Kirchner)

50. Plaintiff incorporates the allegations of the preceding paragraphs 1-46 of the Complaint as if fully restated herein.

51. As averred above, Borrower defaulted on its obligations under the Loan Documents by, *inter alia*, failing to pay principal, interest, or other indebtedness under the Note when due, specifically, the Payoff Shortfall.

52. Guarantor, Christopher Steven Kirchner, has failed to meet his obligations under the Guaranty by, *inter alia*, failing to pay the Guaranteed Obligations.

53. Bank has suffered damages as a result of Christopher Steven Kirchner's breach of the Guaranty, including, but not limited to, the Guaranteed Obligations and such other exact amounts as may be proven at trial.

54. The Guaranty provides that Bank shall recover its costs and expenses, including Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Guaranty.

55. Interest continues to accrue on the Payoff Shortfall at the Interest After Default rate as defined in the Note.

56. The Bank's costs and expenses, including Bank's attorneys' fees and legal expenses incurred in connection with the enforcement of the Guaranty continue to accrue.

57. Despite Bank's demand for payment, Christopher Steven Kirchner has failed and refused to pay to Bank the amounts due Bank under the Guaranty, specifically, the Payoff Shortfall.

58. The Bank has performed all conditions precedent under the Loan Documents.

WHEREFORE, PNC Bank, National Association, successor by merger to PNC Equipment Finance, LLC prays that this Court enter a judgment in the above-captioned action that (1) the

Bank is entitled to judgment in its favor and against Christopher Steven Kirchner in the amount due under the Loan Documents and in the amount proven at trial, *plus* pre-judgment interest, and post judgment interest on any judgment accruing at the Interest After Default rate as defined in the Note from and after August 18, 2022, *plus* accruing attorneys' fees, costs, and expenses accruing after August 18, 2022; and (2) the Bank is entitled to such other relief as is just and equitable under the circumstances.

## COUNT III - ACTION ON GUARANTY
### (Bank v. Alyssa Beth Kirchner)

59. Plaintiff incorporates the allegations of the preceding paragraphs 1-55 of the Complaint as if fully restated herein.

60. As averred above, Borrower defaulted on its obligations under the Loan Documents by, *inter alia*, failing to pay principal, interest, or other indebtedness under the Note when due, specifically, the Payoff Shortfall.

61. Guarantor, Alyssa Beth Kirchner, has failed to meet her obligations under the Guaranty by, *inter alia*, failing to pay the Guaranteed Obligations.

62. Bank has suffered damages as a result of Alyssa Beth Kirchner's breach of the Guaranty, including, but not limited to, the Guaranteed Obligations and such other exact amounts as may be proven at trial.

63. The Guaranty provides that Bank shall recover its costs and expenses, including Bank's reasonable attorneys' fees and legal expenses incurred in connection with the enforcement of the Guaranty.

64. Interest continues to accrue on the Payoff Shortfall at the Interest After Default rate as defined in the Note.

65. The Bank's costs and expenses, including Bank's attorneys' fees and legal expenses incurred in connection with the enforcement of the Guaranty continue to accrue.

66. Despite Bank's demand for payment, Alyssa Beth Kirchner has failed and refused to pay to Bank the amounts due Bank under the Guaranty, specifically, the Payoff Shortfall.

67. The Bank has performed all conditions precedent under the Loan Documents.

WHEREFORE, PNC Bank, National Association, successor by merger to PNC Equipment Finance, LLC prays that this Court enter a judgment in the above-captioned action that (1) the Bank is entitled to judgment in its favor and against Alyssa Beth Kirchner in the amount due under the Loan Documents and in the amount proven at trial, *plus* pre-judgment interest, and post judgment interest on any judgment accruing at the Interest After Default rate as defined in the Note from and after August 18, 2022, *plus* accruing attorneys' fees, costs, and expenses accruing after August 18, 2022; and (2) the Bank is entitled to such other relief as is just and equitable under the circumstances.

**Respectfully Submitted,**

PADFIELD & STOUT, L.L.P.
420 Throckmorton Street, Suite 1210
Fort Worth, Texas 76102 – 3751
(817)-338-1616 Telephone
(817)-338-1610 Facsimile

/s/ Brandon Gibbons
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Brandon Gibbons
State Bar I.D. #24082516
bgibbons@padfieldstout.com

**BUCHANAN INGERSOLL & ROONEY**
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219-4413

        (412) 392-2091 – Telephone

        Terry A. Shulsky (*Pending Pro Hac Vice*)
        PA State Bar ID 82379
        terry.shulsky@bipc.com

        *Attorneys for the Plaintiff*