IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:22-cv-01104-O |
| KFIM, LLC, *et al.*, | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Motion for Default Judgment filed by PNC Bank, National Association ("PNC") on November 10, 2023. ECF No. 14. By Order dated November 13, 2023, United States District Judge Reed O'Connor referred the Motion to the undersigned for hearing, if necessary, and final determination under 28 U.S.C. § 636(b). ECF No. 15. Having considered the Motion, briefing, appendices, and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 14) and award $223,165.36 in damages, pre-judgment interest in the amount of $47,370.76 through July 1, 2024 (plus $73.61 per diem until judgment is entered), post-judgment interest calculated at the applicable federal rate from the date judgment is entered and compounded annually, attorney's fees in the amount of $6,225.00, expenses in the amount of $27.20, and costs of court as calculated by the clerk.

**I.   BACKGROUND**

This case involves allegations that the defendants owe the plaintiff money because they defaulted on a loan. ECF No. 1. On or about January 7, 2022, defendant KFIM LLC ("KFIM") entered into a security agreement with PNC. *Id.* at 3; ECF No. 1-1. The security agreement

financed the acquisition of an aircraft ("the Aircraft"), with the aircraft, itself, serving as the collateral that secured the transaction. ECF No. 1 at 3; ECF No. 1-1 at 2. Under the security agreement, PNC loaned KFIM $10,850,000.00 to purchase the aircraft, and KFIM executed and delivered a promissory note to PNC in that same amount. ECF No. 1 at 3-4, ECF No. 1-1, ECF No. 1-2. Christopher Steven Kirchner and Alyssa Beth Kirchner (collectively, "the Guarantors") personally guaranteed the payment of up to $3,100,000.00, plus other costs and expenses. ECF No. 1 at 4; ECF No 1-3 at 1. The security agreement, note, guaranty, and all related documents are collectively referred to as the "Loan Documents." ECF No. 1 at 4.

PNC alleges that KFIM defaulted on the Loan Documents in numerous ways. *Id*. at 5. PNC describes a "Monetary Default," where KFIM failed to make monthly payments due; a "Contracts Default," where KFIM failed to pay a sum owed under a management agreement and failed to make a required progress payment; an "Inspection Default," where required inspections were not completed; an "Airworthiness Default" that is related to a failure to inspect; a "Storage Default," where KFIM did not store the aircraft in the required location; and a "MAC Default" where the material adverse changes affiliated with the other defaults created an additional default. *Id*.

PNC notified KFIM and the Guarantors of these defaults and demanded payment in the amount of $10,929,570.57 ("the Default Amount"). ECF No. 1 at 6, ECF No. 1-4. KFIM requested permission to sell the Aircraft and use the proceeds to pay off the Loan, and PNC consented. ECF No. 1 at 6; ECF No. 1-5.

In a letter dated August 18, 2022 (the "August 18 Payoff Letter"), PNC stated that the amount required to pay the loan in full was $10,348,684.59. ECF No. 1 at 6; ECF No. 1-5 at 4. In the letter, PNC reserved the right to revise and notify KFIM and the guarantors of any change in the payoff sum due to calculation errors. ECF No. 1 at 6, ECF No. 1-5 at 2. The Aircraft was sold,

and immediately afterwards, PNC realized that there was a calculation error in the August 18 Payoff Letter and that the sum stated in that letter was short by $223,165.36 (the "Payoff Shortfall"). ECF No. 1 at 7.

On August 22, 2022, PNC notified KFIM of the shortfall orally and in writing and demanded that it wire PNC the payoff shortfall. *Id.,* ECF No. 1-6. PNC repeated these demands in a letter dated August 26, 2022. ECF No. 1 at 7; ECF No. 1-7. But to date, the defendants have failed to pay PNC the shortfall.

Accordingly, on December 12, 2022, PNC sued, seeking to get KFIM (or its guarantors) to pay the shortfall, plus attorneys' fees, costs, expenses, pre-judgment interest, and post-judgment interest. ECF No. 1 at 12; ECF No. 14-5 at 2. KFIM was served on December 21, 2022, and PNC moved for alternative service on the Guarantors on February 15, 2023 following several failed attempts at service. ECF No. 4. Judge O'Connor referred that motion to the undersigned on June 1, 2023, and the undersigned granted the motion on September 5, 2023. ECF Nos. 5, 6. PNC served the Guarantors via first-class mail on October 16, 2023, and it also provided copies of the summons and complaint to guardhouse attendants at the entrance to the Guarantors' gated neighborhood on September 29, 2023. ECF Nos. 9, 10. On October 23, 2023, Judge O'Connor ordered PNC to move for default (ECF No. 11), and on October 26, 2023, PNC did so. ECF No. 12. The clerk entered default on October 27, 2023. ECF No. 13. PNC moved for default judgment against all defendants on November 10, 2023, and the Motion is now ripe for the Court's review. ECF No. 14.

## II.     LEGAL STANDARDS

### A.     Default Judgment.

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has

failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *Brown*, 84 F.3d at 141; *see also* Fed. R. Civ. P. 55(a) (noting default occurs where the defendant "has failed to plead or otherwise defend" against the complaint). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default and the plaintiff's claim is not "for a sum certain or a sum that can be made certain by computation," the plaintiff must apply for a default judgment from the Court. Fed. R. Civ. P. 55(b) (1-2). However, the Court may not enter default judgment against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 521.

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Rather, courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Courts use a three-pronged analysis to determine if default judgment is appropriate. *J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). First, courts ask if default judgment is procedurally warranted. *See Lindsey*, 161 F.3d at 893. Under *Lindsey*, the Court may consider whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) default judgment would be too harsh; and (6) the court would be obliged to set aside the default upon motion from the defendant. *Id.*

Second, if default is procedurally warranted under *Lindsey*, courts analyze the substantive merits of the plaintiff's claims and ask if the pleadings establish a sufficient basis for default judgment. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The

pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Morelia*, 126 F. Supp. 3d at 813. In making this determination, the Complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 & n.29 (5th Cir. 2002) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY K. KANE, FEDERAL PRACTICE & PROCEDURE § 2688 at 58-59 & n.5 (3d ed. 1998)). At this juncture, courts often find it helpful to conduct a Rule 55(b)(2) hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) ("The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."); *see* Fed. R. Civ. P. 55(b)(2) (noting courts may conduct a hearing on motions for default judgment if needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter").

While the Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments," this policy is "counterbalanced by considerations of

social goals, justice and expediency, a weighing process . . . largely within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). But default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989); *see also Shipco*, 814 F.2d at 1014 (calling default judgments "draconian").

### III. ANALYSIS

#### A. Default judgment is procedurally warranted under *Lindsey*.

Under *Lindsey*, default judgment may be procedurally warranted based on six considerations. *See* 161 F.3d at 893. Each of the six supports default judgment for PNC's claims.

For the first factor, no material issues of fact remain for PNC's claims. As explained more fully below, PNC's pleadings state particular facts to show liability for breach of contract and action on guaranty (breach of guaranty). Furthermore, since Defendants have not participated in this suit, they have not disputed any material facts that PNC alleged.

For the second factor, nothing here shows that the "substantial prejudice" requirement would undermine PNC's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. If anything, this requirement strengthens PNC's entitlement to default judgment, because PNC may be prejudiced by Defendants' non-participation. *See United States v. Petra Corp.*, No. 3:22-CV-0930-B, 2023 WL 4374432, at *3 (N.D. Tex. July 6, 2023) (noting that the defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing the [participating party's] interests."). The third and fourth factors also support default judgment because the grounds of Defendants' default are clearly established, *see* ECF Nos. 8-10, and nothing shows that the default was due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893.

6

As for the fifth factor, to date Defendants have failed to file any pleadings with the Court, despite being afforded abundant opportunities to do so. More than eighteen months have passed since PNC filed its complaint, and Defendants have filed nothing. Accordingly, the fifth factor supports default judgment, as a judgment by default is not too harsh when the defaulting party has had every opportunity to plead its cause but did not do so. *See id.*

Finally, given the satisfaction of the above elements, nothing indicates that the Court would "be obliged to set aside the default upon motion from the defendant." *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense").

With each of the six *Lindsey* factors supporting default judgment on PNC's claims, they survive the step-one analysis. *See Morelia*, 126 F. Supp. 3d at 813-14. At step two, the Court must examine the substantive merits of PNC's claims and determine whether the pleadings establish a sufficient basis for default judgment on each. *See Nishimatsu*, 515 F.2d at 1206.

### B.   On the merits, PNC's pleadings satisfy Rule 8.

A plaintiff's pleadings typically establish entitlement to default judgment if they satisfy Federal Rule of Civil Procedure 8. *Wooten*, 788 F.3d at 498. To do so, the pleadings need only contain "a short and plain statement of the claim" showing the plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a). Factual allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This low threshold is less rigorous than that under Rule 12(b)(6)." *Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Group, LLC*, No. 3:22-CV-00085-E, 2023 WL 349790, at *4

(N.D. Tex. Jan. 20, 2023) (internal citations and quotations omitted) (citing *Wooten*, 788 F.3d at 498).

PNC pleads causes of action for breach of contract against KFIM and for action on guaranty against Guarantors. PNC has satisfied Rule 8 for both claims.

### 1. Texas law applies, as PNC has not raised the issue of conflict of laws.

The Aircraft Security Agreement explains,

> THIS AGREEMENT WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED IN ACCORDANCE WITH THE LAWS OF [PENNSYLVANIA] . . . EXCEPT THAT THE LAWS OF THE STATE WHERE ANY COLLATERAL IS LOCATED (IF DIFFERENT FROM [PENNSYLVANIA]) SHALL GOVERN THE CREATION, PERFECTION AND FORECLOSURE OF THE LIENS CREATED HEREUNDER ON SUCH PROPERTY OR ANY INTEREST THEREIN.

ECF No. 1-1 at 11. The note states that it, the Aircraft Security Agreement, and related documents will be interpreted in accordance with the laws of Pennsylvania, excluding its conflict of laws rules. ECF No. 1-2 at 5. The guaranty states similarly. ECF No. 1-3 at 5.

In a case based on diversity jurisdiction, courts apply the "choice of law rules of the forum" state, which here is Texas. *Ottemann v. Knights of Columbus*, 36 F.4th 600, 605 (5th Cir. 2022) (internal quotations omitted) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003)). Therefore, since this is a diversity case (ECF No. 1 at 2), this Court applies the Texas choice of law rules.

But the Court "need not decide which state's laws apply unless those laws conflict." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). Rather, in the absence of a conflict, the Court "simply appl[ies] the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (collecting cases). "Texas courts presume that other states'

laws are the same as its own[,]" and the party urging application of a different state's law "bears the burden of rebutting that presumption." *Playboy Enterprises, Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013) (citing *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 & n. 5 (Tex. 2008)). Because PNC does not raise the issue, the Court presumes that there is no conflict between the laws of Texas, Pennsylvania, and any other state where the collateral may be located, and "simply appl[ies]" Texas law. *Mumblow*, 401 F.3d at 620.

### 2. PNC has satisfied Rule 8 for its breach of contract claim.

Under Texas law, to recover on a suit for breach of contract, a plaintiff must "show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (internal citations and quotations omitted); *see also Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

All of the elements are met in the instant case. First, PNC has shown that contracts exist between it and the defendants. ECF Nos. 1-1, 1-2, and 1-3. Nothing in the record suggests that the contracts were not valid. Second, PNC has demonstrated via a sworn declaration that it performed its contractual obligation to loan KFIM money. ECF No. 14-1 at 3. Third, PNC has demonstrated that KFIM breached the contracts at issue by defaulting in numerous ways and by not paying the shortfall amount when required to do so. ECF No. 1 at 5, ECF No. 1-6, ECF No. 1-7. Fourth, PNC suffered damages in the amount of $223,165.36. ECF No. 1-7 at 3. Accordingly, PNC has met the Rule 8 standard to show that KFIM is liable for breach of contract.

### 3. PNC has satisfied Rule 8 for its "action on guaranty" claim.

To state a breach of guaranty claim under Texas law, PNC "must prove (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Harrison Co., L.L.C. v. A-Z Wholesalers, Inc.*, 44 F.4th 342, 347 (5th Cir. 2022); *see also Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ).

Again, the elements are met here. PNC has shown the existence, ownership, and terms of a guaranty contract. ECF No. 1-3. It alleges that any conditions upon which liability is based have been satisfied. ECF No. 1 at 8 ("All conditions precedent to this action were satisfied, waived, or occurred."); ECF No. 1-3. It has also shown that the Guarantors failed to perform the promise to pay set out in the guaranty agreement. ECF No. 1 at 7, ECF No. 1-3, ECF No. 1-7. Therefore, PNC has met the Rule 8 standard to show that the Guarantors are liable for breach of guaranty.

### C. PNC is entitled to actual damages, attorney's fees, costs, expenses, pre-judgment interest, and post-judgment interest.

Having concluded default judgment is proper, the Court must now "determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 814. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). This is the only step in the inquiry where the Court does not assume the truth of the pleadings. *See Shipco*, 814 F.2d at 1014 ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages.").

#### 1. Actual damages

Generally, plaintiffs cannot summarily provide the Court with figures for damages or attorney's fees without explanation. Rather, they must "establish[] the necessary facts," either

through detailed affidavits or an evidentiary hearing, to make the amount "capable of mathematical calculation." *United Artists*, 605 F.2d at 857. PNC has established the necessary facts to demonstrate that the defendants owe it $223,165.36 in actual damages based on the security agreement, note, and guaranty. ECF No. 1-7 at 3; *see also* ECF Nos. 1-1, 1-2 and 1-3.

### 2. Attorney's fees

Under Texas law, PNC is entitled to recover reasonable and necessary attorney's fees as the prevailing party on its breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(b)(8) (West 2022); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000) ("[W]hen a prevailing party in a breach of contract suit seeks attorneys' fees, an award of reasonable fees is mandatory under Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8)."). Furthermore, as part of an indemnity provision in the Security Agreement, KFIM agreed to indemnify PNC "from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur . . ." ECF No. 1-1 at 10. PNC now seeks attorney's fees in the amount of $6,225.00. ECF No. 14-2 at 2.

Step one in determining an appropriate fee award involves finding the lodestar, which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). In support of its request for attorney's fees, PNC offers the Affidavit of Brandon J. Gibbons and unredacted billing invoices. ECF No. 14-2. Upon review of the affidavit and invoices, and based upon the Court's familiarity with the reasonable, usual, and customary billing rates in the Fort Worth Division of the Court for lawyers

with similar years of experience and backgrounds, the undersigned finds that PNC's fee award request is a reasonable lodestar amount.

After calculating the lodestar, the Court can adjust it based on the twelve *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. The *Johnson* factors include: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." *Id.*; *see also* Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9) (incorporating some of the *Johnson* factors into the State Bar of Texas's rules of professional conduct). "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

After considering the evidence that PNC filed, the Court concludes that no further adjustment is warranted. Half of the *Johnson* factors are neutral (factors 2, 3, 4, 7, 10, and 11), while half of the *Johnson* factors indicate the lodestar amount is reasonable (factors 1, 5, 6, 8, 9, and 12). None indicates that the requested fees are unreasonable. Moreover, the most important of the *Johnson* factors—"the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel," *see Migis*, 135 F.3d at 1047—all suggest that the lodestar amount is reasonable.

To briefly touch on the neutral factors, factor two is not at issue here because this case stems from a suit for breach of contract and breach of guaranty, thus presenting no "novel" or "difficult" legal questions. *See Johnson,* 488 F.2d at 718. Likewise, the third factor is not relevant because this case does not require attorneys with highly specific or niche competencies. *See id.* And PNC's counsel does not argue that the attorneys who worked on this case were significantly precluded from other work by taking this case, rendering the fourth factor inapplicable. *See id.* Further, there was no suggestion that pressing time constraints applied to this action or that there were atypical "time limitations imposed by the client or circumstances." *Id.* Because the case presents nothing uniquely undesirable from a practitioner's perspective, the tenth *Johnson* factor also does not inform the Court's inquiry. *See id* at 719. And finally, "the nature and length of the professional relationship with the client" does not factor into the Court's reasonability analysis because nothing of record reflects the nature and extent of PNC's relationship with its counsel. Accordingly, that factor is irrelevant for the Court's reasonability analysis. *See id.*

As for factors suggesting that $6,225.00 would be a reasonable attorney fee for work in this matter, the first *Johnson* factor is "the time and labor required" for an attorney to prosecute the action. *Id.* at 717. As noted above, the amount of time and labor required is not at issue in the lodestar amount, nor is there any need to revise it at this point. Having examined the relevant billing records and determined that $6,225.00 is a reasonable lodestar, the Court concludes that this amount provides ample, but not unreasonable, compensation to PNC in this case. Consequently, the amount of requested fees is reasonable. *See id.* at 717.

The fifth *Johnson* factor also lends support to PNC's request. The fifth factor looks to the "customary fee" in similar cases. *See id.* at 718. In this regard, "courts in the Northern District [of Texas] have approved regular hourly rates of $345, $350, and $375." *Koehler v. Aetna Health Inc.*,

915 F. Supp. 2d 789, 799 (N.D. Tex. 2013) (collecting cases). The hourly rates requested by PNC's counsel ($275.00 an hour for attorneys and $150.00 an hour for legal support staff) are at or below these benchmarks. ECF No. 14-2. This is naturally accompanied by the sixth factor—"whether the fee is fixed or contingent." 488 F.2d at 718. Ordinarily, larger fees may be justified if the fee is contingent. But here the fee is not particularly large, and the fact PNC's counsel apparently represented PNC on an hourly basis facilitates efficient calculations. The sixth factor supports an attorney's fee award of $6,225.00 here.

By far the most important factors in this case are *Johnson*'s eighth and ninth factors: the "amount involved and results obtained" and the "experience, reputation, and ability of the attorneys." *See id.* at 718-19. The eighth factor makes $6,225.00 seem very reasonable, as such an amount represents less than five percent of the total value of the final judgment, excluding interest. *See* ECF No. 14-5 at 2. Likewise, the ninth factor shows $6,225.00 to be a reasonable amount because of the experience and reputation of PNC's counsel. And finally, attorney's fee awards roughly comparable to the amount of fees charged here are commonplace in this Court and elsewhere. *See, e.g.*, *Koehler*, 915 F. Supp. 2d at 797-800 (collecting cases). Accordingly, Judge O'Connor should enter an Amended Final Judgment granting $6,225.00 in reasonable attorneys' fees.

### 3. Costs and Expenses

PNC also requests "expenses" in the amount of $1,236.30. ECF No. 14-2 at 2. Its invoices explain that these expenses cover filing fees (*id*. at 5), service fees (*id*. at 5, 8, 18), photocopies (*id*. at 15-16), and postage (*id*. at 16). Aside from postage, these "expenses" are better termed "costs."

As a prevailing party, PNC is entitled to recover its costs, unless a federal statute, a federal rule, or the Court provides differently. Fed. R. Civ. P. 54(d)(1). Taxable court costs applicable to this case include (1) fees paid to the clerk and marshal; (2) court reporter fees for deposition transcripts; (3) witness fees and related expenses; (4) printing fees; and (5) fees for copies of papers necessarily obtained for the case. 28 U.S.C. § 1920. Under Rule 54, the clerk of Court is responsible for taxing costs. For these reasons, the Court should award PNC its taxable court costs in an amount to be taxed by the clerk of Court under Fed. R. Civ. P. 54.

As for the postage expense, KFIM agreed in the Security Agreement to indemnify PNC for litigation expenses. ECF No. 1-1 at 10. Accordingly, the Court should award PNC its postage expenses in the amount of $27.20. ECF No. 14-2 at 16.

### 4. Pre-judgment and post-judgment interest

"[P]re-judgment interest is calculated under state law." *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (citation omitted). Under the terms of the note, the amount of pre-judgment interest is a variable amount, and upon default, the variable rate increases by 4.00%. ECF No. 14-1 at 23. According to the evidence offered by PNC, the amount of pre-judgment interest due and owing through July 1, 2024 is $47,370.76 with pre-judgment interest continuing to accrue at the amount of $76.31 per day until the date of judgment. ECF No. 18-1.

The Court should award PNC post-judgment interest at the federal rate under 28 U.S.C. § 1961(a). *Colony*, 288 F.3d at 234 (citation omitted). Post-judgment interest compounds annually. *Craig v. GACP II, L.P.*, No. 3:19-cv-0058-G, 2022 WL 1778392, at *4 (N.D. Tex. June 1, 2022). Courts award post-judgment interest "on the entire amount of the final judgment, including damages, pre-judgment interest, and attorney's fees." *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d

1275, 1280 (5th Cir. 1991). Thus, Judge O'Connor should grant PNC's request for post-judgment interest at the applicable federal rate from the date of final judgment until it is paid in full.

## IV. CONCLUSION

Default judgment is procedurally warranted, and PNC has met the Rule 8 standards on the merits of its breach of contract and breach of guaranty claims. For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 14) and award $223,165.36 in damages, plus pre-judgment interest in the amount of $47,370.76 through July 1, 2024 (plus $73.61 per diem until judgment is entered), post-judgment interest calculated at the applicable federal rate from the date judgment is entered and compounded annually, attorney's fees in the amount of $6,225.00, expenses in the amount of $27.20, and costs of court as calculated by the clerk.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the

time to file objections to 14 days).

**SIGNED** on July 2, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE